UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LORI ANN DELGADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-137-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lori Ann Delgado filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision denying her application for supplemental security income. The district court transferred the action to the undersigned magistrate judge, but both parties did not consent to proceed before a magistrate judge. The undersigned has considered the parties arguments, the administrative record, and the applicable law and now recommends that the district court affirm the Commissioner's decision and dismiss this action.

## I.   Standards of Review

A claimant will qualify for benefits if he meets the statutory definition of "disabled." The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2014). A physical or mental impairment is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* A claimant is disabled "only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 1382c(a)(3)(B). The standard under which the Commissioner reviews a claim for supplemental security income involves a five-step sequential evaluation. 20 C.F.R. § 416.920(a)(4) (2014). Under the sequential evaluation, an administrative law judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id.*

The court's standard of review in a Social Security appeal is deferential and limited to determining whether the Commissioner's decision is supported by substantial evidence from the record as a whole and whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## II.   Statement of the Case

Delgado claims she became disabled at the age of 35 as a result of hypothyroidism and problems with her knees and back. (Tr. 111, 136, 154.) According to the medical records, she experienced symptoms related to hypothyroidism, including weight loss, prominent eyes, fatigue, hair loss, decreased vision, and a feeling of choking because of enlargement of her thyroid. (Tr. 215, 346–47.) Surgical removal of the thyroid was recommended, and Delgado ultimately underwent a thyroidectomy. (Tr. 217, 363.)

In regard to problems with her knees, Delgado sought emergency care treatment on April 8, 2008, after she was involved in an accident involving a motorcycle. (Tr. 403.) She reported to a

doctor at the emergency room that she was riding a motorcycle and as they came to a stop, the motorcycle fell over, and she injured her left knee.  *Id*.  Testing showed no fracture or dislocation and unremarkable soft tissue findings.  (Tr. 405.)  The doctor diagnosed knee contusion, knee sprain, and ligamentous injury and provided Delgado with crutches and an Ace bandage.  (Tr. 303.)  Delgado complained of knee pain thereafter on an intermittent basis, but testing showed only mild degenerative changes.  *See, e.g.*, Tr. 296, 336–38.  Physical examination showed normal range of motion and normal muscle strength, tone, and stability.  (Tr. 194, 258, 264, 273.)

Delgado reported lower back pain after she was in a minor motor vehicle accident on September 27, 2008, the date on which she claims that she became disabled.  (Tr. 243, 395.)  According to the medical records, she was driving a minivan when a truck ran the minivan off the road.  *Id*.  On the day of the accident she was examined at an emergency room where she complained only of pain in the area where her seat belt crossed her chest, but she complained the following day of a gradual onset of lower back pain.  (Tr. 243, 388.)  Delgado was found to have normal range of motion in her back, and radiograph testing showed no fracture or subluxation, normal disc space alignment, and no scoliosis or spondylolisthesis.  (Tr. 392, 396.)  The treating doctor discharged Delgado that day with a diagnosis of low back pain and lumbar strain.  *Id*.

At that time Delgado worked as a cashier at a dollar store and began seeing Robert L. Ordonez, M.D., who referred her to physical therapy two days after the accident.  (Tr. 144, 227, 254.)  A couple of weeks later Dr. Ordonez provided an "Authorization for Absence" advising that Delgado should not work for three weeks.  (Tr. 250.)  Three weeks later, on November 4, 2008, he received results from an MRI that showed moderate diffuse disc bulge with mild to moderate neural foraminal narrowing and deformity of the ventral thecal sac; the overall impression, however, was

3

minimal degenerative changes of the vertebral bodies.  (Tr. 245, 276.)  On that date Dr. Ordonez

indicated on an "Authorization for Absence" that he had advised Delgado to discontinue work.  (Tr.

247.)  He released her to return to work on February 27, 2008, but Delgado did not work again.  (Tr.

144, 229.)

Dr. Ordonez also referred Delgado to a pain specialist who diagnosed her with lumbalgia

without radiculopathy and a desiccated disc; the specialist noted "only mild bulging at L5-S1,

although there is some neuroforaminal compromise particularly on the left which could coincide

with her complaints of pain."  (Tr. 188–89.)  Although he found her pain out of proportion to the

medical findings and believed there was a component of psychological overlay connected with

litigation, he treated her with epidural steroid injections.  *Id.*; Tr. 195, 199, 265, 269.  The following

spring Delgado slipped and fell on her driveway, and an x-ray showed mild scoliosis of the lumbar

spine and mild degenerative changes of the same.  (Tr. 386.)  Testing later that year showed mild

narrowing at the L5-S1 level and minimal degenerative changes.  (Tr. 442.)

The ALJ analyzed Delgado's claim under the five-step sequential evaluation and determined

at the fourth step of the evaluation that Delgado retained the residual functional capacity to perform

work at the light exertional level in jobs that can be characterized as "simple," would allow her to

sit or stand at her option, would not require climbing, crawling, kneeling, or squatting, and involve

only occasional stooping and crouching.  (Tr. 19.)  Based on testimony from a vocational expert, he

determined that Delgado was unable to perform her past work but could work as a shipping and

receiving weigher, small products assembler, and production sorter.  (Tr. 22, 43.)

Delgado argues that the ALJ erred in two respects.  She argues that he failed to apply the

standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), and make a finding

concerning the severity of her impairments at step two of the sequential disability evaluation. She also argues that the ALJ erred at step three of the sequential disability evaluation because he failed to find that her spinal impairments met or equaled the criteria of Listing 101.04.

## III.   Discussion

### A.   *The ALJ's Step Two Determination*

The ALJ determined that the medical evidence established "nicotine abuse with mild degenerative changes of the lower lumbar spine, L5-S1, and early mild degenerative changes of the left knee . . . post near-total thyroidectomy for Graves disease" but that Delgado did not have an impairment or combination of impairments that met or were medically equal to a listing in the regulations.  (Tr. 12.)  Delgado argues that the ALJ was required to determine whether she had severe impairment(s) at step two and that he ignored the standard in *Stone*, skipped step two of the sequential evaluation, and proceeded directly to step three.  She claims that this is reversible error.

As Delgado points out, the standard in *Stone* is applicable at step two of the sequential evaluation process.  At that step, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments.  20 C.F.R. §§ 920(a)(4)(ii), 923.  Whether an impairment is "severe" is determined by applying the standard in *Stone*.  Under that standard, which is often referred to as the "severity standard," an impairment can be considered as not severe only if it is a slight abnormality that has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.  *Stone*, 752 F.2d at 1101.  The court in *Stone* directed that the severity standard articulated in the opinion must be applied in cases in which a claimant seeks Social Security disability benefits and that if the Commissioner fails to apply the standard, the case must be remanded for reconsideration.  *Id.* at

5

1106. The court further directed that it must be assumed that the Commissioner applied an incorrect standard at step two unless the Commissioner provides an express statement regarding the severity standard set forth in *Stone* or cites *Stone* or another opinion with the same holding or references the standard. *See id.* at 1106 (requiring remand in the absence of reference to *Stone* or "another opinion of the same effect" or an express statement regarding the standard).

   In this case the ALJ did not cite *Stone* or another case with a similar holding, and he did not use the language from the severity standard when he discussed Delgado's impairments. (Tr. 12–16.) The ALJ's omission, however, was not error. The instruction in *Stone* is applicable only in those cases in which an ALJ determines at step two of the sequential evaluation process that a claimant is not disabled. The issue in *Stone* and in other cases the court had reviewed prior to *Stone* was the Commissioner's practice of prematurely denying claims based on medical evidence alone without regard to the impact a claimant's impairments might have on ability to work. *Id.* at 1103. In those cases, the Commissioner stopped the inquiry at step two and denied benefits on grounds of nonseverity. *Id.* at 1101.

   The ALJ in this case did not end his inquiry at step two; rather, he proceeded past step two and made his determination at step five of the sequential evaluation. (Tr. 22.) If the ALJ proceeds past step two in the sequential evaluation process, "the court must infer that a severe impairment was found." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Moon v. Bowen*, 810 F.2d 472, 473 (5th Cir. 1987) (finding that the "[Commissioner] implicitly found a severe impairment existed because he proceeded to the fifth step of the sequential process, beyond the issue of non-severe impairment").

   Thus, the severity finding at step two of the sequential evaluation process is a threshold assessment that allows an ALJ to dismiss a claim without further evaluation. 20 C.F.R.

§ 416.920(a)(4)(ii).  When an ALJ proceeds past step two, the case does not turn on the question of severity but, instead, whether the claimant's impairments prevent him from performing work. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (rejecting the plaintiff's complaint that the ALJ did not find an impairment severe and noting that the ALJ's decision was made at the fourth step rather than at the second step of the sequential disability evaluation).  The ALJ's non-disability decision in this case was based on his determination at step five of the sequential disability evaluation.  (Tr. 22.)  Because the ALJ's non-disability decision was not based on his determination about the severity of Delgado's impairments, the district court should find that the ALJ implicitly made a determination that Delgado has severe impairments.

Delgado acknowledges the holdings in *Moon* and *Mays* in her reply brief, but she argues that those cases involved situations in which the ALJ failed to cite the *Stone* standard but analyzed the impairments at later steps to determine a finding of not disabled.  Pl.'s Reply Br. 13.  She cites *Naquin v. Astrue*, No. 07-104-FJP-CN, 2008 WL 474206 (M.D. La. Feb. 14, 2008) and *Wichman v. Astrue*, 857 F. Supp. 2d 618 (W.D. Tex. 2012), in support of her contention that reversal is required in this case.

Delgado's arguments do not change the undersigned's recommendation.  First, as Delgado acknowledges, the situations in *Moon* and *Mays* involved the ALJ omitting mention of the *Stone* standard but evaluating the claimant's impairments at later steps.  That is exactly what was done in this case.  Second, *Naquin* and *Wichman* are inapplicable to Delgado's case.

In *Naquin*, the ALJ failed to find that the claimant's mental impairments were severe despite  evidence of "ongoing mental problems and . . . medications [that were] substantial."  2008 WL 474206, at *3 (citation omitted)).  The court noted that the ALJ discussed the claimant's

psychiatric medical records but never mentioned the "slight abnormality" standard and did not cite *Stone*. The court indicated that such an omission, standing alone, would not necessarily constitute reversible error: "*Stone* does not require a wholesale remand . . . simply because the ALJ did not use 'magic words.'" *Naquin*, 2008 WL 474206, at *2. The court also acknowledged cases such as *Mays* in which no reversible error was found because the reviewing court could infer that the ALJ found that the impairments in question were severe because he considered the impairments at subsequent steps. *Id*. The court distinguished the situation in *Naquin*: the court held that remand was required because the court could not infer that the ALJ found that the impairment in question—the claimant's mental impairment—was severe because, although the ALJ discussed other impairments at the subsequent steps, he failed to consider the claimant's mental impairment at those steps. *Id*. at *4.

Such is not the situation in this case. The court can infer that the ALJ found that Delgado's nicotine abuse, degenerative changes in her lower lumbar spine and left knee, and post near-total thyroidectomy were severe impairments because he listed them at the beginning of his opinion, and he considered them at subsequent steps. (Tr. 12–21.) Importantly, he specifically considered the limiting effects of the impairments at the fourth and fifth steps of the sequential evaluation because he limited Delgado to work that would allow her to sit and stand at her option and that would not require postural maneuvers that would affect her back and knees. (Tr. 29–30.) Accordingly, the holding in *Naquin* does not apply in this case.

*Wichman*, the other case Delgado cites, is likewise inapplicable to the case at bar. In *Wichman*, the ALJ determined that the claimant's fibromyalgia syndrome, lumbago, obesity, and major depressive disorder were severe impairments but failed to properly apply the *Stone* standard in regard to her sleep disturbance, chronic fatigue syndrome, and hypothyroidism. *Wichman*, 857

8

F.2d at 624.  The court found error, noting that the ALJ made his determination of non-severity based on whether the impairments had "'no more than minimal effect on an individual's ability to work'" whereas, under the *Stone* standard, an impairments is not severe if it is "a 'slight abnormality' with 'such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.'" *Id*. at 626 (citing *Stone*, 752 F. 2d at 1101).  The court found the distinction critical because the ALJ's standard for finding an impairment not severe permitted "some interference with work, while *Stone* does not allow for any interference." *Id*.  The court also faulted the ALJ for failing to consider the second portion of the *Stone* standard: "'irrespective of age, education, or work experience.'" *Id*.

Thus, remand was required in *Wichman* because the ALJ based his non-severity determination regarding the claimant's sleep disturbance, chronic fatigue syndrome, and hypothyroidism on an erroneous standard and, consequently, failed to properly determine the effect those impairments would have on the claimant's ability to work. *Id*. at 626–27.  In contrast, the ALJ in this case believed that Delgado's nicotine abuse, as well as the degenerative changes in her back and knees and limitations caused by her thyroid problems—problems that she claims are disabling—were severe, and he considered the effect of these impairments throughout his decision. (Tr. 12– 21.)

Significantly, in contrast to the plaintiff in *Wichman*, Delgado has not pointed to any impairments that she would fault the ALJ for not finding severe.  In fact, Delgado bases her claim of disability on the problems in her lower back and knees (Tr. 38, 136–37), and these are some of the impairments that the ALJ found to be severe.  In the absence of an argument that the ALJ failed to apply the correct severity standard to a particular impairment that Delgado believes to be

disabling, *Wichman* does not apply to this case.

In sum, the ALJ may not have used "magic words," but he found at step two of the sequential disability evaluation that Delgado suffered from the severe impairments of nicotine abuse, degenerative changes in her lower back and knees, and limitations caused by thyroid problem. And he considered those impairments at the third, fourth, and fifth steps of the sequential evaluation. The court should therefore infer that he found severe impairments and find no error. *See Reyes v. Sullivan*, 915 F.2d 151, 154 (5th Cir. 1990) ("Because the ALJ proceeded to the third step . . ., we must infer that the ALJ found a severe impairment.")

B. *The ALJ's Step Three Determination*

Delgado contends that the ALJ failed to consider medical evidence establishing that her back problems meet or equal the criteria of Listing 101.04, the listing for disorders of the spine. At step three of the sequential evaluation, the Commissioner is required to compare the claimant's impairment(s) with listings contained in appendix 1 of the regulations that are considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). If the Commissioner determines that the claimant's impairment(s) meet the duration requirement in the Social Security Act and that they also meet or medically equal the criteria of one of the listings in appendix 1, the claimant is presumed to be disabled and qualifies for benefits without further inquiry. *Id*. at 390. A claimant will not be presumed disabled under a listing in the Commissioner's regulations unless his impairments meet or equal each of the specified criteria of the listing at issue, and the burden is on the claimant to make this showing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

The threshold requirement of Listing 101.04 requires evidence of a disorder, such as

spinal arachnoiditis, spinal stenosis, osteoarthritis, or degenerative disc disease that results in the compromise of a nerve root or the spinal cord. *Id.* Delgado claims the evidence shows that she suffers from degenerative disc disease with annular tears, a bulging disc at L5-S1, neural foraminal stenosis at L5-S1, and spondylolysis at L5 and that these disorders are consistent with evidence of nerve root compression. As Delgado argues, there is some evidence that she suffers from degenerative disc disease with annular tears. (Tr. 187, 386; *compare* Tr. 442 (minimal degenerative changes).) However, even if the court were to find that Delgado's impairments meet the threshold requirement of Listing 101.04, the medical evidence does not support a conclusion that her impairments meet the remaining criteria of the listing.

The remaining criteria require compromise of a nerve root or the spinal cord with medical findings of nerve root compression "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* Although straight-leg testing yielded positive results, Tr. 233, 235, 241, 258, 280, the evidence does not show limitation of motion of the spine. (Tr. 257–58; *compare* Tr. 242 (decreased range of motion based on subjective reports).) Nor is there evidence of motor loss accompanied by sensory or reflex loss; specifically, there is no evidence of muscle atrophy or muscle weakness. The pain specialist who treated Delgado for back pain consistently noted normal muscle strength, tone, and stability. (Tr. 194, 264, 275.)

The burden was on Delgado to show that her spinal impairments met every one of the criteria included in Listing 101.04; the claimant must "meet *all* of the specified medical criteria." *See Randall v. Astrue*, 570 F.3d 651, 658 n.10 (5th Cir. 2009) (quoting *Sullivan v. Zebley*, 493 U.S.

521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in the original)).  Delgado did not

meet that burden.  Presumptive disability was therefore not called for in her case, and the ALJ did

not err in proceeding to the final steps of the sequential disability evaluation.  *See Bowen v. Yuckert*,

482 U.S. 137, 141, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (noting that the claimant is

"conclusively presumed" to be disabled if the criteria of a listing is met and, if not, the evaluation

proceeds to the subsequent step).

C.    *The ALJ's Ultimate Conclusion*

"Substantial evidence is more than a scintilla but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  A finding of no substantial evidence is

appropriate only if no credible evidentiary choices exist to support the decision.  *Johnson v. Bowen*,

864 F.2d 340, 343–44 (5th Cir. 1988).  Substantial evidence supports the ALJ's ultimate conclusion

of non-disability.

Delgado, a mother of five, testified at the hearing that she could not do anything,

spent her days sitting on a sofa, and relied on three of her children to help her.  (Tr. 33, 36.)

However, she reported in application documents that she took her children to the park a couple of

times per month; helped two of her children prepare for school and get on the bus; helped her

children with their homework; and did light housework.  (Tr. 163, 165, 168.)  Delgado likewise

reported to an examining physician that her typical daily activities consisted of taking care of her

children, performing light housework, and "doing things around the house."  (Tr. 278.)

Although the undersigned may sympathize with Delgado in regard to her pain, as the

ALJ found, her pain is not disabling.  Pain, alone, does not establish disability.  *Owens v. Heckler*,

770 F.2d 1276, 1281 (5th Cir. 1995) (citation omitted). Pain is disabling only if it is constant,

12

unremitting, and wholly unresponsive to therapeutic treatment.  *Chambliss v. Massanari*, 269 F.3d

520, 522 (5th Cir. 2001).  After approximately two months of treatment, Delgado's pain specialist

noted: "Qualitatively, the pain is rated as moderate."  (Tr. 255.)  He further noted that functional

impairment as a result of Delgado's pain was "moderate" and that "when present it interferes only

with some daily activities" and was "intermittent" and worse in the mornings.  *Id.*; Tr. 266.

Significantly, Delgado's physician released her to return to work after physical

therapy following her accident in 2008, and examining and non-examining consulting physicians

determined that Delgado was capable of performing light work with the limitations that the ALJ

incorporated into his determination.  (Tr. 229, 282, 284–91.)

## IV.   Recommendation

Based on the discussion in this Report and Recommendation, the undersigned recommends

that the district court affirm the Commissioner's decision and dismiss this action.

## V.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner

provided by law.  Any party who objects to any part of this Report and Recommendation must file

specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C.

§ 636(b)(1) (2014); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify

the place in the magistrate judge's Report and Recommendation where the disputed determination

is found.  An objection that merely incorporates by reference or refers to the briefing before the

magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved

party from appealing the factual findings and legal conclusions of the magistrate judge that are

accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:         June 24, 2014.

NANCY M. KOENIG
United States Magistrate Judge

14